UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN CYRIO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-4289** |
| **LT. CORBERT HUNT, LT. VERNON SMITH,**<br>**LT. WADE RIGDON, SGT. OZELIA SPIKER,**<br>**SGT. JOHN ODOM** | **SECTION "I"(4)** |

**REPORT AND RECOMMENDATION**

Before the Court are a **Motion to Dismiss (Rec. Doc. No. 15)** filed by defendants, Lieutenant Corbert Hunt, Lieutenant Vernon Smith, and Lieutenant Wade Rigdon, and a **Motion to Dismiss (Rec. Doc. No. 28)** filed by defendant Sergeant John Odom, each seeking dismissal of the plaintiff's claims for lack of jurisdiction and failure to state a claim for which relief can be granted. The motions, along with the entire case, were referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**.

On September 18, 2006, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff, John Cyrio, participating by telephone.[2]

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).

[2] Rec. Doc. No. 11. The plaintiff was sworn prior to testifying. The cassette tape of the hearing is being forwarded to the custody of the Court Recording Unit along with a copy of this Report and Recommendation.

Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

I.  **Factual Background**

   A.  **The Complaint**

The plaintiff, John Cyrio, filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Lieutenant Corbert Hunt, Lieutenant Vernon Smith, Lieutenant Wade, Sergeant Ozelia Spikes (erroneously named as "Spiker"), and Sergeant John Odom.  Cyrio alleges that, while incarcerated at the B.B. "Sixty" Rayburn Correctional Center ("RCC") (f/k/a Washington Correctional Institute), he was beaten by the defendants while being escorted in the prison.

Cyrio alleges that Lieutenant Smith went to his dorm and instructed him to go outside, face the wall, and put his hands behind his back.  Cyrio claims that when he arrived on the yard, Lieutenant Rigdon was already there.  He further claims that Smith ordered him to his knees and Rigdon began punching him in the face.  Rigdon allegedly asked Cyrio why he was complaining about Sergeant Spikes.  Cyrio denied saying anything about Spikes.  Cyrio claims that the officers shackled his feet and told him to lay on his stomach.  He claims that, during this time, Rigdon applied a pressure hold on him behind his right ear.

Cyrio complains that the officers then picked him up and escorted him out the door, where they met up with Lieutenant Hunt.  He claims that Hunt and Rigdon began dragging him backwards up the sidewalk, causing him to scrape his legs.  He claims that, as they approached the Sun Unit, Hunt, Smith, and Rigdon punched and kicked him and slammed him to the ground.

He further claims that, while he was being beaten, Hunt told him that he would tell the prison officials that Cyrio had spit on him.  Cyrio states that the officers pressed a beeper and Sergeant

Odom arrived and began kicking him too. He claims that Hunt and Rigdon then dragged him to lock down. While there, he claims that while removing his shackles, one of the officers pulled his boxers shorts down and kicked him in the butt.

He also alleges that Smith and Rigdon returned later to handcuff him. Smith then sprayed him with pepper spray. He was taken to see Sergeant Stewart, the EMT. Cyrio claims that he told Stewart what happened and Smith called Stewart away to speak with him in private. When they returned, Cyrio claims that he asked to be placed on suicide watch. Smith and Hunt took him to a suicide watch cell where his social worker, Ms. Span, was waiting to see him. The officers made him kneel in front of her to talk to her. When he told her what happened, the officers laughed and called him names. Smith and the others put him in the cell, took off his handcuffs and gave him a paper gown to wear.

Cyrio seeks $500,000.00 in monetary damages, transfer to another institution, and proper medical attention.

### B.    The *Spears* Hearing

Cyrio testified that, on the night of March 14, 2006, he was in Wind Unit, cell number one, in the shower. An inmate advised him that his locker was being searched by guards because of a "search down." Cyrio stated that he asked Sergeant Spikes why she was taking his clothes. He claimed that she said that she could do what she wanted. Cyrio claims that, because he disagreed with her, she "hit the beeper on him." He explained that this was a signal that she was in distress and called for other officers. Cyrio testified that he did not threaten her and did not understand why she called for backup.

He further stated that another officer walked him outside and told him to put his hands

behind his back.  He complied.  Cyrio stated that the officer escorted him to the Lieutenant's office and instructed to him get on his knees.  Again, he complied.  Cyrio claimed that the Lieutenant Smith, who was standing to the left of him, hit him in the face, and complained about him trying to "tip his officer," meaning scare her.  Cyrio claimed that he was then instructed to lay on his stomach.  The officers shackled his legs and used a pressure point technique behind his ear.

He claims that Lieutenant William picked him up and walked him, facing backwards, to the Sun Unit.  He complains that William also lied and reported that Cyrio spit on him.  He stated that Hunt and Smith picked him up and slammed him down on the concrete causing a fracture injury to his shoulder.  They then took him to R3, Cell 10.  He also stated that Hunt took off the cuffs and then made him take his pants down so he could kick him in his buttocks.

Cyrio testified that he sued Lieutenant Rigdon and Sergeant Odom because they also stomped on him while he was on the ground in shackles and handcuffs.  Cyrio further testified that the officers pursued disciplinary charges against him for aggravated disobedience and property destruction.  He denied actually having a disciplinary hearing.  He was found guilty of the disciplinary charges and sentenced to a loss of 180 days of good time credits.  Cyrio stated that he did not seek review of the disciplinary findings because he does not read that well.

Cyrio also testified that he is incarcerated on a conviction as a felon in possession of a weapon. He received a fifteen year sentence and has served twelve years.  He also has received two additional years added to his sentence because he was caught masturbating in the jail.

### C.    Defendants' Motions to Dismiss

In response to Cyrio's complaint, the defendants have filed the two motions pursuant to Fed. R. Civ. P. arts. 12(b)(1), (2), and (6), seeking dismissal of Cyrio's claims on the grounds that they

are immune from suit in their official capacities and because he fails to state a claim of medical indifference. The defendants also contend that his claims of excessive force are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

A Partial Report and Recommendation was issued by the undersigned regarding dismissal of the defendant Sergeant Ozelia Spikes for failure to prosecute.[3] The Partial Report and Recommendation was adopted by the District Judge on March 20, 2007, and the claims against that defendant have been dismissed.[4] Thus, the motions are addressed to the remaining defendants.

Attached to the motions by reference are copies of Cyrio's disciplinary records related to this incident. These documents reflect that Cadet Ozelia Spiker completed an Unusual Occurrence Report in which she described Cyrio's verbal and physical threats when he discovered her conducting a shakedown search of his cell on March 14, 2006.[5] As a result of the incident, she issued Rules Violation Reports charging Cyrio with defiance and aggravated disobedience.[6] She also indicated that her search uncovered several pieces of clothing which belonged to four other inmates.[7] For this, he was charged with theft.[8]

According to the Unusual Occurrence Reports written by Lieutenant Rigdon and Lieutenant Hunt, in response to the incident with Spikes, Cyrio was taken to the office where he was cuffed and shackled. While being escorted to another part of the prison, he was agitated and resisted the

---

[3] Rec. Doc. No. 20.

[4] Rec. Doc. No. 22.

[5] Rec. Doc. No. 15-3, p. 9, Unusual Occurrence Report, 3/14/06.

[6] Rec. Doc. No. 15-3, p. 4, Disciplinary Report, 3/14/06.

[7] Rec. Doc. No. 15-3, p. 12, WCI Evidence Form, 3/14/06.

[8] Rec. Doc. No. 15-3, p. 10, Disciplinary Report, 3/14/06.

officers.[9] After several "combative" moves against the officers, Cyrio was eventually restrained. For his actions, he was charged with defiance and aggravated disobedience.[10] He was taken to the medical unit for a post use of force exam.[11] Cyrio told the EMT that he did not want to live anymore and he was placed on suicide watch.[12]

At a disciplinary hearing held March 15, 2006, Cyrio pleaded guilty to the theft charge.[13] He received four weeks of cell confinement and the imposition of 30 day loss of good time credits arising from a previously suspended sentence on another disciplinary infraction.[14]

The disciplinary board also found him guilty of defiance and aggravated disobedience arising from his resistence to the escorting officers.[15] He was sentenced to 180 days loss of good time credits and he was transferred to a working cell block within the prison.[16] He was also charged to pay $30 in restitution.[17]

He was also found guilty with regard to the defiance and aggravated disobedience arising

---

[9] Rec. Doc. No. 15-3, p. 6, Unusual Occurrence Report, 3/14/06; Rec. Doc. No. 15-3, p. 8, Unusual Occurrence Report, 3/14/06.

[10] Rec. Doc. No. 15-3, p. 2, Disciplinary Report, 3/14/06.

[11] Rec. Doc. No. 15-3, p. 6, Unusual Occurrence Report, 3/14/06; Rec. Doc. No. 15-3, p. 8, Unusual Occurrence Report, 3/14/06.

[12] Rec. Doc. No. 15-3, p. 7, Unusual Occurrence Report, 3/14/06.

[13] Rec. Doc. No. 15-3, p. 1, Conduct Report; Rec. Doc. No. 15-3, p. 10, Disciplinary Report, 3/14/06.

[14] *Id.*

[15] Rec. Doc. No. 15-3, p. 1, Conduct Report; Rec. Doc. No. 15-3, p. 2, Disciplinary Report, 3/14/06.

[16] *Id.*

[17] *Id.*

out of the incident with Spikes.[18] He was sentenced to eight weeks of cell confinement.[19] He also received 60 days loss of good time credits previously suspended on another disciplinary charge.[20]

## II. Standards of Review

### A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)[21]

Under Rule 12(b)(1), the court may dismiss a complaint if it lacks jurisdiction over the subject matter. *See* Fed. R. Civ. P. 12(b)(1). The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A complaint shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Ms., Inc. v. City of Madison, Ms.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

In resolving a Rule 12(b) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990).

---

[18] Rec. Doc. No. 15-3, p. 1, Conduct Report; Rec. Doc. No. 15-3, p. 4, Disciplinary Report, 3/14/06.

[19] *Id*.

[20] *Id*.

[21] Although counsel for defendants urges the motion under Fed. R. Civ. P. 12(b)(2), lack of personal jurisdiction, the State failed to brief any argument in that regard. Nevertheless, it appears counsel may have confused the issues of the lack of subject matter jurisdiction in light of the Eleventh Amendment with that of personal jurisdiction over the Louisiana residents found within the Eastern District of Louisiana. Clearly, the defendants are within the personal jurisdiction of this Court.

Further, the Fifth Circuit has held that when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In *Taylor v. Gibson*, the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir.1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

### B.     Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint for failure to state a claim upon which any relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). However, when a Rule 12(b)(6) motion is presented with matters outside the pleadings, the motion shall be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. 56. In this case, the defendants have attached Cyrio's disciplinary records to support the motion. Therefore, the court must consider the Motion to Dismiss as a Motion for Summary Judgment under Fed. R. Civ. P. 56.

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for considering a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact that the moving party is entitled to a judgment as a matter of law.

The Court must therefore determine whether a genuine issue of material fact exists.

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court indicated that the party seeking summary judgment must point out the absence of evidence showing a genuine issue of material fact. *See Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Savings Bank*, 54 F.3d 27, 31 (1st Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

Further, the party opposing summary judgment and who bears the burden of proof at trial must then "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admission on file, 'designate' specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. On motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir. 1997). However, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Services Automobile Assoc.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)).

**III.   Analysis**

    **A.   Eleventh Amendment Immunity Doctrine**

The Eleventh Amendment to the United States Constitution reads as follows: "The Judicial

9

power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While unapparent from the text, it is well established that this immunity extends to suits brought against a state by its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 16-21 (1890). The Supreme Court has repeatedly held that the Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his or her own State. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986).

To the extent the plaintiff has sued Hunt, Smith, Rigdon, and Odom, in their official capacities, his claims must be dismissed. In order to succeed on a claim of a civil rights violation under Title 42 U.S.C. § 1983, a plaintiff must prove both that the constitutional violation occurred and that it did so because of an action taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). However, it is a fundamental premise of the Supreme Court that a state actor sued in his official capacity is not considered a person for purposes of suit under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Thus, the defendants, in their official capacities, are not persons suable for a civil rights violation under § 1983.

Instead, the action would be considered one taken against the agency they represent. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978). In this case, the agency would be the Louisiana Department of Public Safety and Corrections ("DOC"). The DOC is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401. For Eleventh Amendment purposes, the DOC is considered an arm of the state since any judgment against it or its subdivisions

necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985).

Therefore, suit against the DOC is suit against the State of Louisiana, implicating the Eleventh Amendment immunity doctrine. *Citrano v. Allen Correctional Center*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560 and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)). The Eleventh Amendment does not allow the states, however, to disregard the Constitution or valid federal law. *Alden v. Maine*, 527 U.S. 706, 754-55 (1999). Thus, two constitutional principles limit state sovereign immunity. *Black v. North Panola School Dist.*, 461 F.3d 584 (5th Cir. 2006) (citing *Alden*, at 754-55). First, states are immune from suit per the Eleventh Amendment unless they have given their consent to be sued. *Id*. Where, on its own initiative, a state enacts a statute that consents to suit, it abandons sovereign immunity. *Id*. An exception to this also exists under § 5 of the Fourteenth Amendment, which provides that states cannot prohibit individuals from bringing private suits in state court under 42 U.S.C. § 1983. *Id*. (citing *Alden*, at 756). This exception would not apply in this case which has been brought in federal court.

Second, state sovereign immunity prohibits private suits against States but not against lesser entities. *Alden*, 527 U.S. at 756. Eleventh Amendment immunity does not extend to suits prosecuted against municipalities or other governmental entities that are not considered arms of the state. *Id*. The issue of immunity is raised here by the State and its agent or agencies. Thus, this condition also does not apply since suit is brought against the State.

The only means of avoiding the Eleventh Amendment prohibition in this case would be if

the state has expressly waived Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986). However, as reiterated in the motion to dismiss, the State of Louisiana has not done so. To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court." The record reflects no indication that the State or the DOC have otherwise expressly waived immunity.

Therefore, the Motion to Dismiss as it applies to the defendants in their official capacities should be granted and the claims against them in their official capacities be dismissed with prejudice.

To the extent the plaintiff names the defendants in their individual capacities, the Court will consider those claims and the applicability of the *Heck* doctrine raised by defendants.

### B. <u>Medical Indifference</u>

As relief in this case, Cyrio seeks, among other things, proper medical care. He has not alleged that he was denied medical care or what care he requires. He also has not associated any defendant with an alleged denial of medical care.

The standard of conduct imposed on defendants with respect to the medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 97, 104; *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999) (*quoting Estelle*, 429 U.S. at 104); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999). Section 1983 permits recovery for serious

physical harm "only where the defendant acts intentionally" or with an analogous state of mind usually described as "deliberate indifference" to deprivation of the victim's constitutional right. *See Manarite v. City of Springfield*, 957 F.2d 953, 955 (1st Cir.), *cert. denied*, 506 U.S. 837 (1992) (citing *Canton v. Harris*, 489 U.S. 378, 388-390 (1989)) (discussing deliberate indifference standard in Fourteenth Amendment municipal liability, police denial of medical treatment case). The Supreme Court defined the "deliberate indifference" to mean that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *Stewart*, 174 F.3d at 534; *Reeves*, 27 F.3d at 176; *see also Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). "Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Bradley*, 157 F.3d at 1025.

Cyrio has not met this burden in his allegations. Though he claims that his shoulder was injured in the scuffle, he concedes that he was taken to the medical unit for evaluation immediately after the scuffle with the escorting officers. In addition, Cyrio mentions he was placed on suicide watch when he told the medic that he did not want to live. Without an allegation that a particular defendant was indifferent to a known and serious medical need, Cyrio has failed to state a claim for which relief can be granted and the defendants are entitled to judgment as a matter of law dismissing this claim.

### C.    The *Heck* Doctrine

Cyrio also filed this suit seeking relief of the incidents which gave rise to the disciplinary proceedings as outlined above. Cyrio denies the incidents of alleged abuse occurred the way the

officers reported them in their disciplinary reports.

Cyrio is prohibited, however, from bringing his claims under § 1983 until he complies with the conditions set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that a claim under § 1983 is barred until that conviction has been reversed on direct appeal, expunged by executive order or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus, if a favorable judgment would necessarily imply the invalidity of the prisoner's conviction.  *Heck*, 512 U.S. at 486-87477.

A "conviction," for purposes of the *Heck* doctrine, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits.  It is also for claims for damages and declaratory relief challenging disciplinary proceedings where favorable judgment would necessarily imply the invalidity of the prisoner's disciplinary conviction or the length of the prisoner's confinement.  *Edwards v. Balisok*, 520 U.S. 641, 646 (1997).

The Supreme Court has also placed limitations on the inmate's ability to challenge the disciplinary process itself under § 1983.  In *Sandin v. Connor*, 515 U.S. 472, 481-83 (1995), the Supreme Court held that analysis of a prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists.  "Liberty interests protected by the Fourteenth Amendment may arise from two sources - the Due Process Clause itself and the laws of the States."  *Hewitt v. Helms,* 459 U.S. 460, 466 (1983).

In *Sandin*, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin*, 515 U.S. at 484 (citations omitted). Thus, in *Sandin*, when a convicted prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process does not require that he be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974),[22] and *Hewitt,* 459 U.S. at 470-72.[23] To the extent Cyrio is challenging the disciplinary process itself, the claim also is not cognizable under § 1983.

In the instant case, Cyrio's disciplinary convictions have not been successfully challenged or appealed in any way. Therefore, this court cannot review his claims for relief from or affecting the validity of the disciplinary charges or his challenges to the disciplinary process leading to the convictions. He has failed to state a claim for which relief can be granted and the defendants are entitled to judgment as a matter of law.

The claims are barred from review until such time as the *Heck* conditions are met. As the Fifth Circuit has noted, the dismissal of the plaintiff's claims is <u>with</u> prejudice to their being asserted again until the *Heck* conditions are met. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

**IV.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 15)** filed by defendants, Lieutenant Corbert Hunt, Lieutenant Vernon Smith, and Lieutenant

---

[22] In *Wolff*, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner is not afforded "the full panoply of rights" provided in criminal proceedings. *Wolff*, 418 U.S. at 556. Nevertheless, the *Wolff* court held that, when punishing a prisoner for lengthy periods or when causing loss of privileges or time, prison officials must afford the prisoner <u>some</u> due process in disciplinary proceedings before imposing punishment, including advance written notice of the violation, a written statement from the factfinders, and an opportunity to call witnesses and present evidence. *Id.*

[23] In *Hewitt*, the Supreme Court held that simple disciplinary proceedings where the inmate faced only short disciplinary confinement merely required an informal non-adversary review, some notice of the violation, and the opportunity to make a statement.

Wade Rigdon, and a **Motion to Dismiss (Rec. Doc. No. 28)** filed by defendant Sergeant John Odom be **GRANTED**.

It is further **RECOMMENDED** that the plaintiff's § 1983 claims against the defendants, Hunt, Smith, Rigdon and Odom, in their official capacities, be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction under the Eleventh Amendment immunity doctrine.

It is further **RECOMMENDED** that the plaintiff's § 1983 claims for medical indifference and improper disciplinary proceedings against the defendants, Hunt, Smith, Rigdon, and Odom, in their individual capacities, be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that the plaintiff's § 1983 claims for excessive force against the defendants, Hunt, Smith, Rigdon, and Odom, in their individual capacities, be **DISMISSED WITH PREJUDICE** until such time as the *Heck* conditions are met.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 13th day of June, 2007.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**