# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOHN CYRIO

**VERSUS**

**LT. CORBERT HUNT, LT. VERNON SMITH,
LT. WADE RIGDON, SGT. OZELIA SPIKER,
SGT. JOHN ODOM**

CIVIL ACTION

NO.  06-4289

SECTION "I"(4)

## REPORT AND RECOMMENDATION

Before the Court are a **Motion to Dismiss (Rec. Doc. No. 15)** filed by defendants, Lieutenant Corbert Hunt, Lieutenant Vernon Smith, and Lieutenant Wade Rigdon, and a **Motion to Dismiss (Rec. Doc. No. 28)** filed by defendant Sergeant John Odom, each seeking dismissal of the plaintiff's claims for lack of jurisdiction and failure to state a claim for which relief can be granted.  The motions, along with the entire case, were referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**.

On September 18, 2006, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the *pro se* plaintiff, John Cyrio, participating by

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  *Spears*, 766 F.2d at 180.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).

telephone.[2]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

## I.    Factual Background

### A.    The Complaint

The plaintiff, John Cyrio, filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Lieutenant Corbert Hunt, Lieutenant Vernon Smith, Lieutenant Wade Rigdon, Sergeant Ozelia Spikes (erroneously named as "Spiker"), and Sergeant John Odom.  Cyrio alleges that, while incarcerated at the B.B. "Sixty" Rayburn Correctional Center ("RCC") (f/k/a Washington Correctional Institute), he was beaten by the defendants while being escorted in the prison.

Cyrio alleges that Lieutenant Smith went to his dorm and instructed him to go outside, face the wall, and put his hands behind his back.  Cyrio claims that when he arrived on the yard, Lieutenant Rigdon was already there.  He further claims that Smith ordered him to his knees and Rigdon began punching him in the face.  Rigdon allegedly asked Cyrio why he was complaining about Sergeant Spikes.  Cyrio denied saying anything about Spikes.  Cyrio claims that the officers shackled his feet and told him to lay on his stomach.  He claims that, during this time, Rigdon applied a pressure hold on him behind his right ear.

Cyrio complains that the officers then picked him up and escorted him out the door, where they met up with Lieutenant Hunt.  He claims that Hunt and Rigdon began dragging him backwards up the sidewalk, causing him to scrape his legs.  He claims that, as they approached the Sun Unit, Hunt, Smith, and Rigdon punched and kicked him and slammed him to the ground.

---

[2]Rec. Doc. No. 11.  The plaintiff was sworn prior to testifying.  The cassette tape of the hearing is in the custody of the Court Recording Unit.

He further claims that, while he was being beaten, Hunt told him that he would tell the prison officials that Cyrio had spit on him.  Cyrio states that the officers pressed a beeper and Sergeant Odom arrived and began kicking him too.  He claims that Hunt and Rigdon then dragged him to lock down.  While there, he claims that while removing his shackles, one of the officers pulled his boxers shorts down and kicked him in the butt.

He also alleges that Smith and Rigdon returned later to handcuff him.  Smith then sprayed him with pepper spray.  He was taken to see Sergeant Stewart, the EMT.  Cyrio claims that he told Stewart what happened and Smith called Stewart away to speak with him in private.  When they returned, Cyrio claims that he asked to be placed on suicide watch.  Smith and Hunt took him to a suicide watch cell where his social worker, Ms. Span, was waiting to see him.  The officers made him kneel in front of her to talk to her.  When he told her what happened, the officers laughed and called him names.  Smith and the others put him in the cell, took off his handcuffs and gave him a paper gown to wear.

Cyrio seeks $500,000.00 in monetary damages and transfer to another institution.  Cyrio also seeks proper medical attention as part of his relief, although he has not alleged a medical indifference claim.

**B.**      **The _Spears_ Hearing**

Cyrio testified that, on the night of March  14, 2006, he was in Wind Unit, cell number one, in the shower.  An inmate advised him that his locker was being searched by a female officer, Sergeant Ozelia Spikes, because of a "search down."  Cyrio stated that he asked Sergeant Spikes why she was taking his clothes.  He claimed that she said that she could do what she wanted.  Cyrio claims that, because he disagreed with her, she "hit the beeper on him."  He explained that this was

a signal that she was in distress and called for other officers.  Cyrio testified that he did not threaten her and did not understand why she called for backup.

He further stated that another officer walked him outside and told him to put his hands behind his back.  He complied.  Cyrio stated that the officer escorted him to the Lieutenant's office and instructed to him get on his knees.  Again, he complied.  Cyrio claimed that the Lieutenant Smith, who was standing to the left of him, hit him in the face, and complained about him trying to "tip his officer," meaning scare her.  Cyrio further alleged that Smith then struck him on the left side of his face.  Cyrio claimed that he was then instructed to lay on his stomach.  The officers who were present shackled his legs and used a pressure point technique behind his ear.

He claims that Lieutenant William picked him up and walked him, facing backwards, to the Sun Unit.  He complains that William also lied and reported that Cyrio spit on him.  He stated that Hunt and Smith picked him up and slammed him down on the concrete causing a fracture injury to his shoulder.  They then took him to the Sun Unit, Tier R3, Cell 10.  He also stated that Hunt took off the cuffs and then made him take his pants down so he could kick him in his buttocks.

Cyrio testified that he sued Lieutenant Rigdon and Sergeant Odom because they also stomped on him while he was on the ground in shackles and handcuffs.  He stated that they did this because they claimed that he spit on Rigdon.

Cyrio further testified that the officers pursued several disciplinary charges against him.  Although he did not receive copies of the disciplinary reports, he recalled being charged with violations of Rules 3, 5, and 17.  He stated that, to the best of his knowledge, these charges were for aggravated disobedience and property destruction.  He testified that he appeared before the disciplinary board but that he did not have a disciplinary hearing.  He acknowledged that he was

found guilty of all of the disciplinary charges and was sentenced to a loss of 180 days of good time credits.  Cyrio stated that he did not seek review of the disciplinary findings because he does not read that well.

Cyrio also testified that he is incarcerated on a conviction as a felon in possession of a weapon.  He received a fifteen year sentence and has served twelve years.  He also has received two additional years added to his sentence because he was caught masturbating in the jail.

### C.    Defendants' Motions to Dismiss

In response to Cyrio's complaint, the defendants have filed two motions pursuant to Fed. R. Civ. P. arts. 12(b)(1), (2), and (6), seeking dismissal of Cyrio's claims on the following grounds: (1) they are immune from suit in their official capacities; (2) his claims of wrongful disciplinary proceedings and excessive force are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); (3) he has no constitutional right to a transfer to another facility; (4) he has failed to state a claim for which relief can be granted because he did not allege that the defendants acted with intentional indifference; (5) the Eighth Amendment does not apply to his excessive force claim; (6) he fails to state a claim for medical indifference.  As discussed elsewhere in this opinion, Cyrio has not urged a claim of medical indifference nor has he alleged a claim for wrongful or false disciplinary proceedings.

A Partial Report and Recommendation was issued by the undersigned regarding dismissal of the defendant Sergeant Ozelia Spikes for failure to prosecute.[3]   The Partial Report and

---

[3]Rec. Doc. No. 20.

Recommendation was adopted by the District Judge on March 20, 2007, and the claims against that defendant have been dismissed.[4]  Thus, the motions are addressed to the remaining defendants.

## II.   <u>Standards of Review for Motions to Dismiss</u>[5]

Pursuant to Fed. R. Civ. P. 12(b)(1), the court may dismiss a complaint if it lacks jurisdiction over the subject matter.  *See* Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(6), the court may dismiss a complaint for failure to state a claim for which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(1), (6).  The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim for which relief can be granted.  *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  To survive a Rule 12(b) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, __ U.S.__, 127 S. Ct. 1955, 1974 (2007); *In re Katrina Canal Breaches Litigation*, __ F.3d ___, 2007 WL 2200004 at *10 (5th Cir. Aug. 2, 2007) (recognizing a change in the standard of review). "Factual  allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  *Id*., 127 S. Ct. at 1965 (quotation marks, citations, and footnote omitted).  Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the

---

[4]Rec. Doc. No. 22.

[5]Although counsel for defendants urges the motion under Fed. R. Civ. P. 12(b)(2), lack of personal jurisdiction, the State failed to brief any argument in that regard.  It appears that counsel may have confused the issues of the lack of subject matter jurisdiction with that of personal jurisdiction over these Louisiana residents found within the Eastern District of Louisiana.  Clearly, the defendants are within the personal jurisdiction of this Court.

claim.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.*, 127 S. Ct. at 1965 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In resolving a Rule 12(b) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint.  However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

Further, the Fifth Circuit has held that when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972).  In *Taylor v. Gibson*, the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses  [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated.  An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir.1976);  *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with

disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

**III.** **Analysis**

    **A.** **Eleventh Amendment Immunity Doctrine**

The defendants urge that, in their official capacity, they enjoy absolute immunity from suit under the Eleventh Amendment. Cyrio has not indicated the capacity in which he has named as defendants Hunt, Smith, Rigdon, and Odom. Nevertheless, to the extent he has named them in their official capacities, his claims must be dismissed.

In order to succeed on a claim of a civil rights violation under Title 42 U.S.C. § 1983, a plaintiff must prove both that the constitutional violation occurred and that it did so because of an action taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). However, it is a fundamental premise of the Supreme Court that a state actor sued in his official capacity is not considered a person for purposes of suit under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Thus, the defendants, in their official capacities, are not persons suable for a civil rights violation under § 1983.

Instead, the action would be considered one taken against the agency they represent. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978). In this case, the agency would be the Louisiana Department of Public Safety and Corrections ("DOC"). The DOC is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401. For Eleventh Amendment purposes, the DOC is considered an arm of the state since any judgment against it or its subdivisions

necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985).

Therefore, suit against the DOC is suit against the State of Louisiana, implicating the Eleventh Amendment immunity doctrine. *Citrano v. Allen Correctional Center*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560 and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)). The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986). However, neither the State nor the DOC have expressly waived immunity. In addition, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

The defendants' Motions to Dismiss should be granted in part as to the claims against them in their official capacities. Therefore, Cyrio's claims for which he seeks monetary damages brought against the defendants in their official capacities should be dismissed without prejudice as barred in this Court by the Eleventh Amendment immunity doctrine.

B.    **The *Heck* Doctrine Does Not Apply**

The defendants urge in their motions that Cyrio's claims of excessive force and false disciplinary charges are barred from review under *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that a claim under § 1983 is barred until that conviction has been reversed on direct appeal, expunged by executive order or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus, if a favorable judgment would necessarily imply the invalidity of the prisoner's conviction.  *Heck*, 512 U.S. at 486-87.  A "conviction," for purposes of the *Heck* doctrine, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits.  *Edwards v. Balisok*, 520 U.S. 641, 643-48 (1997).

In this case, Cyrio does not, under any reading of the complaint, challenge the disciplinary proceedings nor his disciplinary confinement pending or after the disciplinary review.  The defendants' reading of the complaint in this regard is overreaching and goes beyond the broad reading granted to *pro se* complaints.[6]

Instead, considering the complaint and the *Spears* Hearing testimony, Cyrio seeks monetary damages against the defendants, Hunt, Smith, Rigdon, and Odom, for their alleged use of excessive force during the altercations which he claims occurred during and after the search of his cell on March 14, 2006.  He acknowledged at the *Spears* Hearing, which is considered an amendment to his complaint, that, as a result of the altercations with the officers, disciplinary proceedings were lodged against him for what he recalled to be aggravated defiance and property destruction.  His sole

---

[6]Pro se civil rights complaints must be broadly construed.  *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

claim before this Court is that of excessive force used by the officers when escorting him from the confrontation with Sergeant Spikes, to the Lieutenant's Office, and then to the Sun Unit.

The defendants also mistakenly contend that Cyrio was charged with assault on the officers and resisting arrest.[7]  The disciplinary records attached the motion to dismiss, which are considered part of the pleadings because they were referenced by the plaintiff in the *Spears* Hearing,[8] demonstrate that the plaintiff was actually charged with defiance, aggravated disobedience, and theft.  He was never charged with assaulting an officer or resisting arrest.  The defendants' motion is based on a factually inaccurate theory.

Considering the parameters of the *Heck* doctrine, there is no basis for this Court to bar review of Cyrio's excessive force claims against these defendants.  Review of the alleged excessive force will not necessarily call into doubt the outcome of the disciplinary proceedings for defiance, aggravated disobedience, and theft.  Accordingly, the defendants' Motions to Dismiss on this basis should be denied.

C.    **Excessive Force under the Eighth Amendment**

The defendants argue in their motion that Cyrio has failed to allege a constitutional violation because he has not alleged that they acted with intentional indifference or that he suffered a significant injury.  They also argue that the Eighth Amendment does not apply to the excessive force claim he urges.

The latter argument is based on the apparent assertion that Cyrio was not yet convicted at the time of the incidents alleged.  Cyrio alleges that he was a convicted inmate at the time of these

---

[7]Rec. Doc. No. 15, p. 2.

[8]*See Causey*, 394 F.3d at 288 (documents attached to a motion to dismiss which were referenced in the complaint are pleadings reviewable on motion to dismiss).  Because of this, the Court need not convert the case to one of a summary judgment with notice to the plaintiff.

incidents, having been convicted as a felon in possession of a weapon and serving his twelfth year of a fifteen year sentence.  The defendants' suggestion otherwise is without support.

Furthermore, the Supreme Court has recognized that a correctional officer's use of excessive physical force against a prisoner may, in some circumstances, constitute cruel and unusual punishment in violation of the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1 (1992).  The analysis of whether the Eighth Amendment has been violated requires consideration of a subjective and objective component.

The objective component concerns whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious.  The objective component of an Eighth Amendment claim can be met by "the pain itself," even if the inmate has no "enduring injury."  *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (*quoting Norman v. Taylor*, 25 F.3d 1259, 1263 n.4 (4th Cir. 1994)).  Cyrio alleged in his complaint, incidents of beatings, including the allegation that Hunt and Rigdon were "dragging me on the sidewalk scrapping the skin off of my leg, at which time I noticed my leg begin [sic] to bleed."[9]  These allegations are sufficient to state a plausible claim for relief under the objective prong.

The subjective component requires an inquiry as to whether the prison official acted with a sufficiently culpable state of mind.  The United States Fifth Circuit Court of Appeals has identified several non-exclusive factors to be considered in evaluating an excessive force claim under the subjective prong of the Eighth Amendment claim: (1) the extent of the injury; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the

---

[9]Rec. Doc. No. 1, p. 6.

threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. Thus, the degree of the injury must be more than *de minimis*. *Id.*; *Gomez v. Chandler*, 163 F.3d 921 (5th Cir. 1999). While the plaintiff need not show a significant injury, the extent of the injury may be considered in determining whether the degree of force was wanton and unnecessary. *Id.*; *Flowers v. Phelps*, 956 F.2d 488, 491 (5th Cir. 1992). "[T]he absence of serious injury is quite relevant to an excessive force inquiry, but does not alone preclude relief." *Baldwin*, 137 F.3d at 839.

Thus, "the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Baldwin*, 137 F.3d at 839. "'[W]henever prison officials stand accused of using excessive force, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *Flowers v. Phelps*, 956 F.2d 488, 491 (5th Cir. 1992).

In making this determination, the trier of fact may draw inferences from its consideration of the first three elements outlined in *Baldwin*. The Court must, however, accord prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain internal security." *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (*quoting Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). No matter how significant the injury, how far in excess of the need, and how unreasonable, if the

officer's action did not constitute a wanton infliction of pain, the plaintiff's claim must fail. *Huguet v. Barnett*, 900 F.2d 838, 841 (5th Cir. 1990). The plaintiff bears the burden of proof on each and every element. *Id.*

In this case, Cyrio has alleged in his complaint, as amended by the *Spears* Hearing testimony, that the defendants pushed him, shoved him, threw him down, beat him, and kicked him as he was escorted around the prison. He further claims that Smith and Rigdon threatened him when he tried to report his injuries to the EMT. He further claimed that one officer pulled his pants down before kicking him in the buttocks. The majority of the alleged beatings and injury are alleged to have occurred remote from the scene of the search of his cell and as a show of strength for talking back to Sergeant Spikes and Lieutenant Smith. He alleges that he was cooperative with their demands to stand, kneel, and move about, and in spite of this, the officers used force against him.

Considering these facts to be true, Cyrio has alleged a set of facts sufficient to plausibly state a claim of excessive force, including allegations of more than *de minimis* injuries caused by force beyond that needed to restrain him under the circumstances. The defendants' Motion to Dismiss on the excessive force claims should be denied and the claims allowed to proceed further.

### D.       No Constitutional Right to a Transfer

The defendants also urge that Cyrio has no right to request as a relief a transfer out of RCC. The defendants also argue that Cyrio has no right to be placed in any particular facility.

As part of the relief sought against the defendants, Cyrio requests that he be transferred to another facility. It is well settled that the due process clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum v. Fano*, 427 U.S.

215, 225 (1976).  Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function.  *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

Louisiana Revised Statute § 15:824, authorizes the Director of Corrections to decide which penal institution an inmate should be delivered or transferred.[10]  The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners.  *See Santos v. La. Dept. of Corr. Secretary*, 1996 WL 89260 at *4 (E.D. La. Feb. 28, 1996) (noting that La. Rev. Stat. Ann. § 15:824(A), (B) does not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).

Thus, the State of Louisiana by its broad discretionary statutes has not created a protected liberty interest in being housed in a particular prison or being transferred from one prison to another.

_____

[10]La. Rev. Stat. Ann. §15:824(A) and (B) provide in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.
B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department.  .  .  .

15

*Santos*, 1996 WL 89260 at *4.  Therefore, Cyrio has no constitutional right to a transfer and therefore no right to a transfer as relief under § 1983.

Accordingly, the defendants' Motion to Dismiss should be granted in so far as it seeks dismissal of Cyrio's request to be transferred to another facility.

## IV.    **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 15)** filed by the defendants, Lieutenant Corbert Hunt, Lieutenant Vernon Smith, and Lieutenant Wade Rigdon, and the **Motion to Dismiss (Rec. Doc. No. 28)** filed by the defendant Sergeant John Odom, pursuant to Fed. R. Civ. P. 12(b)(1), (6), be **GRANTED in part** in so far as the motions seek dismissal of the plaintiff's claims against the defendants in their official capacities and seeks as relief a transfer to another facility and **DENIED in part** in so far as the motions seek dismissal of the excessive force claims under the *Heck* doctrine and for failure to state an excessive force claim under the Eighth Amendment

It is further **RECOMMENDED** that Cyrio's § 1983 claims against the defendants Hunt, Smith, Rigdon, and Odom, in their official capacities, be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim for which relief can be granted and for lack of jurisdiction.

It is further **RECOMMENDED** that Cyrio's request for a transfer to another facility be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Cyrio's § 1983 claims against the defendants, Hunt, Smith, Rigdon, and Odom for excessive force in violation of the Eighth Amendment be allowed to proceed and remain referred to the Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __28th__ day of _____August_____, 2007.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**